**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| EMPIRE FIRE & MARINE : | |
| INSURANCE COMPANY : | |
| : | |
| v. : | CCB-11-3598 |
| : | |
| : | |
| CARROLL GROSS, JR., t/a : | |
| CARROLL GROSS TRUCKING, *et al.* : | |

**MEMORANDUM**

Plaintiff Empire Fire & Marine Insurance Company ("Empire") filed this action against defendants Carroll Gross (who operates Carroll Gross Trucking) and Selective Insurance Company ("Selective") seeking a declaratory judgment that it owes Gross no defense or indemnity under an insurance policy for a fly ash delivery mishap that occurred in 2009. The parties have filed cross- and counter-claims against one another, all seeking declaratory judgments as to the scope of each party's liability for this incident. Empire filed a motion for partial summary judgment, and the parties have cross-moved for summary judgment. For the reasons set forth below, the court will decline to issue any declaratory judgment at this time, and will dismiss the parties' claims without prejudice.

**BACKGROUND**

On May 15, 2009, one of Gross's employees delivered a load of fly ash to Superior Concrete ("Superior") but allegedly hooked his delivery truck up to the wrong intake pipe, ruining a batch of Superior's concrete. (Pl.'s Mem., Ex. A, ECF No. 40, at 3-5). The resulting weakness in the concrete, according to a claim submitted to Gross by Superior, led to $485,000 in structural repairs at the construction sites of two of Superior's customers. (Pl.'s Mem., Ex. B,

1

ECF No. 38-3, at 2). Gross alerted Selective, his general liability insurance provider, and later Empire, his trucking insurance provider, of Superior's claim against him, (*see* ECF No. 38-3 at 3; ECF No. 40 at 2), but both providers have denied that their respective policies would cover the claim. Regardless, Gross apparently never reimbursed Superior for any loss, and the two companies simply parted ways sometime after the incident. Importantly, it is undisputed that Superior's injured customers never brought suit against Superior for their losses, and Superior, in turn, never brought suit against Gross to recover any loss. (*See* Pl.'s Mem., ECF No. 38-1, at 2 n.1; Gross. Aff., ECF No. 41-1, ¶ 7). Furthermore, the parties in the present suit all appear to agree that the applicable statute of limitations has run on any claim Superior's customers could have brought against it for the defective concrete it provided them. (*Id.*).

Nevertheless, because Empire believes that Gross could still be liable for an indemnification claim brought against him by Superior at some point in the future, Empire filed this action seeking a declaratory judgment that the policy it issued Gross would not cover such a claim and that Selective's policy would. Gross and Selective, in turn, have filed claims seeking judgments that each policy would or would not cover such a claim. Gross has also filed a third-party complaint against his insurance broker alleging that, to the extent neither insurance company is held to be liable for a potential claim by Superior, the broker was negligent and breached its contract with Gross in procuring insurance coverage for him.

## **ANALYSIS**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Federal Declaratory

Judgment Act gives a federal district court the power, in any 'case of actual controversy within its jurisdiction,' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (quoting 28 U.S.C. § 2201). However, § 2201 is only an "enabling act" that confers discretion on district courts to determine whether to exercise jurisdiction; it does not confer "an absolute right upon the litigant." *See Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)).

Generally, "a dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an 'actual controversy' within the meaning of [§ 2201], even though the tort claimant has not yet reduced his claim against the insured to judgment." *E.g.*, *Nautilus*, 15 F.3d at 375 n.3 (citing *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941)); *Penn-America*, 368 F.3d at 414. But, in *Nautilus*, *Penn-America*, and *Maryland Casualty*, the existence of an "actual controversy" was clear because a state court action was pending. *See id.* Here, not only has an action *not* been filed, but it is unlikely one *ever* will be filed because the statute of limitations has run on the underlying claim. As a result, Gross argues that, under § 2201, no justiciable controversy exists at all.

Empire disagrees, however, arguing that an actual controversy does exist, even though Superior's injured customers may not be able to bring suit, because the operative statute of limitations is not between Superior and its customers but between Superior and Gross as to a potential action for indemnification and contribution. Empire points out that such an action would not (or will not) have accrued until Superior actually paid (or pays) its customers for the

damage its concrete caused. *See Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.*, 795 A.2d 806, 814 (Md. App. 2002). Thus, the statute of limitations between Superior and its customers would not necessarily bar an indemnification claim by Superior against Gross because it has not necessarily run—that time bar depends on when Superior paid or will pay them for the damage and the parties disagree about whether Superior may, in fact, make payments to its customers for the weak concrete.

Empire's contention that there remains some possible threat of litigation, though tenuous, appears to be correct. Although no party suggests that there is any current threat of litigation related to this claim, because there is no indication in the record that Superior's customers formally released it for the damage (though the construction projects that were affected are almost certainly complete), the *possibility* that Superior may have made later payments to the injured parties—or even could make future payments—is enough to support Empire's concern, however ethereal, that a judgment against Gross related to the mistaken fly ash delivery is not entirely barred by law. In fact, the mere prospect that Empire could, under Maryland law, be obligated to defend Gross against such a suit, even if only to file a brief stating such a claim was time barred, is barely enough to create an "actual controversy" related to the scope of the insurance policies at issue. *See also Penn-America*, 368 F.3d at 413 (considering insurer's "duty-to-defend" in reversing district court's dismissal of a declaratory judgment action); *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 438 A.2d 282, 285 (Md. 1981) (discussing the scope of Maryland liability insurers' duty to defend).

Nonetheless, as stated above, an actual controversy does not confer an absolute right upon parties seeking a declaratory judgment, and this case falls squarely within the court's discretion to deny jurisdiction under § 2201. The risk to the parties that any actual liability will

emerge from this incident is now so low, and the threat of further litigation in this matter is so tenuous, that a declaratory judgment by the court setting out the rights of the parties in this case would come precariously close to being an advisory opinion. *See Preiser v. Newkirk*, 422 U.S. 395, 401-402 (1975) (determining whether a request for declaratory relief has become moot turns on whether "there is a substantial controversy . . . *of sufficient immediacy and reality . . .*") (emphasis in original) (quoting *Maryland Casualty*, 312 U.S. at 273).

The Fourth Circuit has articulated several factors to guide district courts "in determining whether to exercise jurisdiction over a declaratory judgment action." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). In the absence of a parallel state court proceeding, the principal questions are whether "the declaratory relief sought: (1) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). Courts should also consider issues of "federalism, efficiency, comity, and procedural 'fencing.'" *Id.* at 423. Because the controversy underpinning jurisdiction in this case is so slight, the usefulness of a declaratory judgment and the "uncertainty" or "insecurity" that may persist in its absence are correspondingly minimal. Even though declaratory relief would not be entirely frivolous—it would clarify the scope of the parties' insurance contracts with regard to a unique set of facts—because the risk of further liability from the underlying controversy and the likelihood that a similar incident might occur again are so low, discretion counsels against granting any such relief in this matter. Obviously, if the parties are someday confronted with any actual indication that liability may arise related to the fly ash mishap, there would be justification to return to this court seeking declaratory relief. *See Penn-America*, 368 F.3d at 414-15.

Accordingly, the court will deny the parties' cross-motions for summary judgment and dismiss their claims without prejudice.

A separate order follows.

February 12, 2013
Date

/s/
Catherine C. Blake
United States District Judge